UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

TOMMYE BERGERON MESSINA,       )
                               )
          Plaintiff,           )
v.                             )      No.:   3:12-CV-150
                               )             (VARLAN/SHIRLEY)
CAROLYN COLVIN,                )
Acting Commissioner of Social Security,   )
                               )
          Defendant.           )

## MEMORANDUM OPINION AND ORDER

This case is before the undersigned for disposition of Plaintiff's Motion for

Summary Judgment and Memorandum in Support [Docs. 11, 12] and Defendant's

Motion for Summary Judgment and Memorandum in Support [Docs. 13, 14]. Plaintiff

Tommye Bergeron Messina seeks judicial review of the decision of the Administrative

Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting

Commissioner of Social Security ("the Commissioner").

On November 26, 2008, the Plaintiff filed an application for a period of disability,

disability insurance benefits, and/or supplemental security income, claiming a period of

disability which began October 7, 2008. After her application was denied initially and

also denied upon reconsideration, the Plaintiff requested a hearing. On July 14, 2010, a

hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 39-60].

On August 18, 2010, the ALJ found that the Plaintiff was not disabled.

The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since October 7, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following combination of severe impairments: degenerative disc disease of the cervical spine, carpal tunnel syndrome, ulnar nerve neuropathy, hyperlipidemia, anxiety, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can only occasionally climb stairs or ramps; she can only occasionally stoop, bend from the waist to the floor, or crouch; she cannot climb ladders, ropes, or scaffolds; she cannot crawl; she cannot do repetitive handling, feeling, or fingering; she is limited to no more than frequent overheard reaching; and she requires work involving no more than simple, repetitive, and non-detailed tasks.

2

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 30, 1962 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 61.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, and work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 7, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 28-34].

## II.  DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability.  See 42 U.S.C. § 1382(a).

3

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A).  An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

4

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec.,  486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson

5

v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference."  Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner.  See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).  The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s

procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    POSITIONS OF THE PARTIES

Plaintiff argues that the Commissioner's decision was not supported by substantial evidence. She presents three allegations of error: (1) the ALJ erred by not finding that the Plaintiff's alleged fibromyalgia was a severe impairment; (2) the ALJ erred in weighing the medical evidence in the record – specifically, opinions of treating sources; and (3) the ALJ erred in his evaluation of the Plaintiff's credibility and subjective complaints.

The Commissioner responds that the ALJ's decision is supported by substantial evidence. Alternatively, the Commissioner concedes that the ALJ may have erred, but the Commissioner maintains that any error was harmless and not the basis for a remand.

## V.    ANALYSIS

The Court will address each of the Plaintiff's allegations of error in turn.

### A.    Fibromyalgia as a Severe Impairment

As the Plaintiff recognizes, there is no specific listing for fibromyalgia in the listings of impairments found at 20 C.F.R. 404, Subpart P, Appendix 1. The

7

Commissioner will, however, recognize fibromyalgia as a medically determinable impairment if the condition is established by findings that comply with the definition endorsed by the American College of Rheumatology.  See Jarvis v. Comm'r of Soc. Sec., 2009 WL 649655, at *13 (S.D. Ohio 2009).  As with any other medical condition, "[t]he mere diagnosis of fibromyalgia does not *per se* establish disability."  Id.

The Plaintiff's argument is somewhat unclear, but she appears to argue that the ALJ erred by not finding fibromyalgia to be a severe impairment at step two of the analysis.  [Doc. 12 at 6].[1]  Failure to find a specific impairment is severe at step two is legally inconsequential.  As the Court of Appeals for the Sixth Circuit has explained, "once any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps."  McGlothin v. Comm'r of Soc. Sec., 299 Fed. App'x 516, 522 (6th Cir. 2008).  When the ALJ proceeds to step three after finding any severe impairments at step two, then the failure to identify a particular impairment as severe becomes "legally irrelevant."  Id.

In this case, the ALJ found that Plaintiff had at least one severe impairment, and the issue of whether other impairments could have been found to be severe is "legally irrelevant."  See id.  The ALJ specifically found at step two of the sequential evaluation process that Plaintiff had several severe impairments.  [Tr. 29].  Thus, the ALJ found in

---

[1] To the extent the Plaintiff more generally argues that the ALJ did not properly address findings of Sam Kabbani, M.D., the Court will address those findings below in Part B of Section V of this Memorandum and Order.

8

Plaintiff's favor at step two and proceeded through step five of the sequential evaluation process. See 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v), 416.920(a)(4)(iii)-(v).

Because the ALJ did not stop at step two and continued through the sequential analysis, the Court finds that, to the extent the ALJ erred by not including fibromyalgia in the list of severe impairments at stage two, such error is harmless and "legally irrelevant." The undersigned finds that the allegation of error at step two is not well-taken, and it is not an appropriate basis for remand or reversal.

### B.     Weighing the Medical Evidence in the Record

Plaintiff alleges that the ALJ erred in weighing the medical evidence in the record. In her initial Brief in Support of Motion for Summary Judgment [Doc. 12], Plaintiff mentions only Sam Kabbani, M.D., by name in her argument regarding the weighing of the medical evidence in the record, [id. at 11-12]. In her Supplemental Brief [Doc. 17], however, the Plaintiff also takes issue with the weight afforded to the findings of Timothy Renfree, M.D., and her mental health providers, and the ALJ's explanation. The Court will address the weight afforded to each of these sources in turn.

### 1.     Sam Kabbani, M.D.

The Commissioner does not dispute the Plaintiff's classification of Dr. Kabbani of East Tennessee Neurology Clinic, P.C., as a treating physician.

Plaintiff submits that Dr. Kabbani diagnosed Plaintiff with fibromyalgia in an office note composed July 15, 2008. [Doc. 12 at 2 (citing Tr. 227)]. This office note reads:

9

> Ms. Messina returns today for follow-up regarding her right arm pain. She said the Daypro has helped. She lost her job. She seemed [to be] having some depression. She is not suicidal. She is feeling down due to the loss of her job and the pain itself. She has tender spots in more than 11 points. I gave her trial of Cymbalta 30 mg, increased to 60 mg daily for fibromyalgia. Refill medications. Return to my office in three months. Otherwise, no change on physical exam.

[Tr. 227]. Plaintiff notes that Dr. Kabbani also prescribed the Plaintiff pain medication and conducted nerve sensory tests [Tr. 230-33], which Plaintiff argues supports the fibromyalgia diagnosis.

The ALJ discussed Dr. Kabbani's assessment of the Plaintiff stating: "In a July 2008 follow-up visit the claimant reported that the medication that she had been given had helped with pain. She also reported that she had lost her job and that she was feeling depressed." [Tr. 31]. The ALJ also addressed what appears to be the Plaintiff's only other visit with Dr. Kabbani in the record. [Tr. 31]. He explained that in her initial visit in March 2008 she was treated for pain in her right elbow and shoulder and diagnosed with neuropathy in the right arm. [Tr. 31]. With regard to the sensory tests also conducted in March 2008, the ALJ explained: "The treatment record noted that an electromyography conducted in March 2008 revealed significant carpal tunnel syndrome as well as ulnar nerve compression at the elbow, indicating cubital tunnel syndrome." [Id.]

Ultimately, the ALJ concluded that the Plaintiff was capable of performing light work with certain enumerated limitations on stooping, bending, crouching, etc. [Tr. 38]. The ALJ afforded great weight to the state agency consultants and gave little weight to

10

the treating physicians' opinions "to the extent they conclude that the claimant had greater limitations in work-related functioning than indicated by the State agency consultants." [Tr. 33].

The treating physician rule is familiar to the Court and the parties. In short, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

The Court finds that the ALJ may have erred by not giving good reasons for discounting Dr. Kabbani's statement that Plaintiff received treatment for fibromyalgia. For the reasons stated below, however, the Court finds that any such error is not reversible error.

The Court of Appeals for the Sixth Circuit has explained that "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." Wilson, 378 F.3d at 547. The undersigned has weighed this flexibility against more recent pronouncements by the Court of Appeals that it "has made clear that [it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion." Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 380 (6th Cir. 2013) (citing Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011)).

The Court finds that the error with regard to Dr. Kabbani is harmless, because the mere mention of fibromyalgia does not equate to a medical opinion precluding work. Dr. Kabbani did not opine on the nature and extent of the Plaintiff's fibromyalgia. He did not say, for example, that the Plaintiff had difficulty sitting for longer than an hour or that it was reasonable to expect the Plaintiff would have difficulty walking given the severity of her fibromyalgia. Moreover, the ALJ included many limitations that would likely address the pain caused by Plaintiff's fibromyalgia – *e.g.* not stooping, bending; not climbing ladders or engaging in repetitious tasks; not frequently reaching overhead. [Tr. 31]. At the hearing, the Plaintiff mentioned her fibromyalgia and its effect on her ability to sit and stand later in her testimony, but the limitations she alleged were not correlated to or corroborated by Dr. Kabbani. [Tr. 48-49].

Based upon the foregoing, the Court finds that the ALJ did not commit reversible error in affording little weight – to the extent it exceeded the residual functional capacity determination – to Dr. Kabbani's treatment of Plaintiff for fibromyalgia.

### 2. Timothy J. Renfree, M.D.

In her initial brief, Plaintiff argues that the ALJ erred by not discussing the fact that the "treating physician and the Plaintiff have discussed surgery options to possibly alleviate her conditions." [Doc. 12 at 11]. The Plaintiff does not identify the condition or the treating physician to whom she refers, but it appears from the record that Plaintiff meant Timothy J. Renfree, M.D., who treated Plaintiff at Tennessee Orthopaedic Clinic. In her supplemental brief, Plaintiff adds that Dr. Renfree found the Plaintiff had a positive Tinel and compression overlying the cubital tunnel. [Tr. 237]. She also submits that Dr. Renfree found that the nerve conduction studies performed by Dr. Kabbani were significant for carpal tunnel syndrome and nerve compression in the elbow. [Id.].

Plaintiff maintains that the ALJ erred by not affording appropriate weight to these findings or properly explaining the reasons for discounting the findings. As stated above, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight, and where it is not afforded such weight, the ALJ must state good reasons for his or her decision to discount the opinion.

13

On July 21, 2008, Dr. Renfree confirmed that the Plaintiff had carpel tunnel syndrome and cubital tunnel syndrome. He stated, "Her EMG and nerve conduction study per Dr. Kabbani 3/24/08 looking at the numbers here, looks significant for carpal tunnel syndrome as well as ulnar ne[rve] compression at the elbow, cubital tunnel syndrome." [Tr. 237]. He also noted Plaintiff's positive Tinel and compression overlying both the carpal and cubital tunnel. [Id.]. Dr. Renfree recommended surgery. [Id.].

The ALJ found the Plaintiff's severe impairments included carpal tunnel syndrome and ulnar nerve neuropathy. He addressed Dr. Renfree's findings by explaining:

> In a separate July 2008 treatment, the claimant was seen for right greater than left numbness and tingling in her hands. She reported that her physical impairments got worse around November 2007 and now she had loss of grip strength, weakness, increased numbness, and paresthesias. She underwent a nerve conduction study which indicated carpal tunnel syndrome and cubital tunnel syndrome. An examination of her right upper extremity revealed a positive Tinel and compression overlying the cubital tunnel and positive Tinel and compression overlying the carpal tunnel. She had some mild thenar wasting on the right and she could flex and extend her digits. Her sensation was intact to light touch and she noted subjective numbness to her finger tips. She had numbness both ulnarly and radially. The treatment record noted that an electromyography conducted in March 2008 revealed significant carpal tunnel syndrome as well as ulnar nerve compression at the elbow, indicating cubital tunnel syndrome. Surgery for both carpal tunnel release and ulnar nerve surgery has been recommended but the claimant so far has lacked the insurance necessary to get the surgery.

[Tr. 31].

14

The ALJ stated generically that he gave the findings of treating physicians "little weight to the extent that they conclude that the claimant had greater limitations in work-related physical functioning than indicated by the State agency consultants." [Tr. 33]. He added: "The claimant's carpal tunnel syndrome and ulnar neuropathy could be improved with surgery but the claimant simply cannot afford such surgery. Thus, she has not reached a level of maximum medical improvement with respect to those impairments despite suggested plan for treatment." [Tr. 32].

The Plaintiff has not cited the Court to, nor has the Court found any findings made by Dr. Renfree that were actually discounted. Louise G. Patikas, M.D., the state agency physician who reviewed the file, adopted Dr. Renfree's findings from July 21, 2008. [Tr. 377]. Dr. Patikas found that the Plaintiff was limited in her manipulation including reaching, handling, fingering, and feeling, [Tr. 373], and the ALJ adopted the same limitations. Another state agency physician, Robert T. Doster, found similar manipulative limitations, except that he found the Plaintiff was not limited in her ability to feel. [Tr. 436]. The ALJ, however, adopted Dr. Patikas's more restrictive findings which included limitations on feeling. [Tr. 30].

The Court has reviewed the treatment notes from Dr. Renfree and finds that Dr. Renfree never indicated limitations beyond the limitations endorsed by the state agency physician and adopted by the ALJ. [Tr. 237]. Thus, the Court finds that the ALJ did not discount the findings of Dr. Renfree.

15

The Court acknowledges that the ALJ's generic statement that all treating physicians received little weight is a somewhat confusing way of stating his actual findings, and the Court could arguably find that the ALJ erred by not stating the weight afforded to Dr. Renfree's treatment more explicitly. After reviewing the record, however, the Court is convinced that Dr. Renfree did not actually offer an opinion on the extent of the actual limitations from the Plaintiff's carpal and capital syndromes. He failed to do so despite the fact that he specifically noted that the Plaintiff was "a receptionist apparently unemployed." [Tr. 236]. The ALJ and the state agency physicians acknowledged and adopted Dr. Renfree's diagnoses, and the ALJ incorporated limitations into the residual functional capacity determination that addressed the carpal and capital syndromes.

Based upon the foregoing, the Court finds that the ALJ did not err in addressing or affording weight to the findings of Dr. Renfree.

### 3. Mental Health Providers

In her supplemental brief, Plaintiff argues that the ALJ erred in weighing the opinions of her mental health providers. The Plaintiff was treated by Psychiatrist Shirley Trentham for depression in 2008 to 2009. Dr. Trentham indicated that the Plaintiff suffered from Neurotic Depression and assessed the Plaintiff with a Global Assessment Functioning ("GAF") scores of 52 to 60. [Tr. 362, 364, 366, 358, 432, 434]. Diana Cox, a therapist, wrote a letter on December 23, 2010, stating that the Plaintiff is continuing treatment, was having difficulty controlling her symptoms, and "would be unable to

maintain employment." [Tr. 451]. She also stated that the Plaintiff would have difficulty making decisions, procrastinating, and not being self-assured.

Andrew J. Phay, Ph.D., the state agency physician, diagnosed Plaintiff with moderate, recurrent depressive disorder. [Tr. 391]. He found that the Plaintiff was likely to have some but not substantial difficulty maintaining concentration, performing routine daily activities and completing a normal work week with acceptable performance/productivity. [Tr. 395].

The ALJ discussed the Plaintiff's mental health treatment history at length, [Tr. 32], and as with the other treating physicians the ALJ discounted the opinions of Plaintiff's treating sources to the extent they conflicted with the findings of the state agency physicians. Initially, the Court finds that the treating psychiatrists' GAF scores between 50 and 60, which indicate moderate symptoms, are consistent with the ALJ's limitation of the Plaintiff's residual functional capacity to simple, repetitive, non-detailed tasks. [Tr. 30]. The Court finds that the ALJ did not discount these scores. Alternatively, to the extent the ALJ's opinion may be interpreted as discounting these scores, the Court finds that the ALJ properly explained this finding by noting the treatment relationship and Dr. Trentham's specialty, but stating that the scores were considered along with later assessments indicating that the Plaintiff was doing better, [Tr. 32]

The ALJ did err in discussing the Plaintiff's daily activities. He noted that the "claimant stays home and cares for the needs of her husband and children," and

17

thereafter, concluded that the Plaintiff had only "mild restrictions." [Tr. 32]. Plaintiff testified that her ex-husband only occasionally stays with her, [Tr. 44], and she explained that her children help her with chores rather than her caring for them, [Tr. 51, 54-55]. This error, however, occurred in discussing Plaintiff's mental health and is not raised by the Plaintiff. It appears to the undersigned to be harmless.

With regard to the letter from Ms. Cox, the Court finds first that Ms. Cox was not a treating physician because she is a therapist. As a result her opinion is not entitled to the deference afforded to a treating physician. The Plaintiff acknowledges the same. [Doc. 17 at 9]. Even if a medical source is not a treating physician, the ALJ is required to consider, but not discuss every medical opinion he or she receives. See 20 C.F.R. § 404.1527; Boseley v. Comm'r of Soc. Sec, 397 Fed. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion."). Thus, the Court turns to the issue of whether the ALJ failed to consider Ms. Cox's letter and whether any such failure would be reversible error.

In pertinent part, Ms. Cox's letter stated that the Plaintiff had problems with making decisions, procrastinating, and being self-assured and that she had issues controlling her depression. [Tr. 451]. These conditions are adequately addressed through the portion of the residual functional capacity finding that she could perform "work involving no more than simple, repetitive, and non-detailed tasks." [Tr. 30].

18

The other portion of the opinion which opines that the Plaintiff "would be unable to maintain employment" infringes upon an area of decision reserved for the Commissioner. [Tr. 451]. The ALJ would have been more thorough had he stated that Ms. Cox's assessment would be afforded little weight in the decision, but the lack of weight afforded to the assessment is consistent with 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2), which instruct applicants that the Commissioner is "responsible for making the determination or decision about whether you meet the statutory definition of disability." Moreover, it is consistent with the case law of the Sixth Circuit, which also holds that the issue of whether the claimant can or cannot perform work is reserved for the ALJ's determination. See, e.g., Bass v. McMahon, 499 F.3d 506, 511 (6th Cir. 2007) ("[T]he conclusion of disability is reserved to the Secretary . . . ."); Gaskin v. Comm'r of Soc. Sec., 280 Fed. App'x 472, 475-76 (6th Cir. 2008) ("[T]he ultimate determination of disability is a matter reserved to the Commissioner."). The Court finds that any failure to discuss Ms. Cox's opinion that the Plaintiff could not maintain employment is harmless.

Based upon the foregoing, the Court finds that the ALJ did not err in addressing or affording weight to the findings of the Plaintiff's mental health providers.

### C. Plaintiff's Credibility and Subjective Complaints

Finally, the Plaintiff argues that the ALJ did not comply with SSR 96-7p, which addresses evaluation of credibility. Specifically, the Plaintiff argues that the ALJ gave too much weight to the fact that Plaintiff received unemployment and sought

19

employment. [Doc. 12 at 14]. In addition, she argues that the ALJ discounted the Plaintiff's credibility because she did not undergo surgery. [Id.].

Social Security Ruling 96-7 is lengthy and addresses a number of topics, but generally, it instructs:

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."

SSR 96-7p, 1996 WL 374186, *4.

With regard to the Plaintiff's credibility, the ALJ initially noted that the Plaintiff received unemployment until just one week before the hearing on her claim. [Tr. 31]. The ALJ explained:

> [I]n order to qualify for unemployment insurance benefits, a person must hold themselves out as being ready, willing, and able to work provid[ed] an opportunity to work presents itself, and in most instances, must report their job seeking efforts in order to continue to qualify for benefits . . . . Although unemployment benefits are not relevant to a calculation of whether the claimant was engaging in substantial gainful activity, the fact that she received those benefits when she claimed to be disabled should be considered against her credibility.

[Tr. 29].  After stating that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms but not the intensity, persistence, and limitations alleged, the ALJ further explained:

> The claimant alleges that she is unable to work due to her combination of physical and mental impairments, yet she drew unemployment insurance from 2008 to 2010 on the premise that she was ready, willing, and able to work providing an opportunity to work presented itself.  The claimant testified at the hearing that she was laid off from her last job because the position was eliminated in the bad economy.  In fact, the claimant testified that she has tried multiple times to find new employment but has not been successful.  The claimant's carpal tunnel syndrome and ulnar neuropathy could be improved with surgery but the claimant simply cannot afford such surgery.  Thus, she has not reached a level of maximum medical improvement with respect to those impairments despite the suggested plan for treatment. The claimant's mental impairments are moderately limited at most and the residual functional capacity set forth above takes into consideration her mental limitations.

[Tr. 32].

"The ALJ's credibility findings are subject to substantial deference on review. . . ." White v. Comm'r of Soc. Sec., 572 F.3d 272, 288 (6th Cir. 2009) (quoting Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994)).  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility," Walters, 127 F.3d at 531.

The Court of Appeals for the Sixth Circuit has held that collection of unemployment benefits, which requires recipients to state that they are seeking work, conflicts with allegations of disability under the Social Security Act. As the Court of Appeals explained in Workman v. Comm'r of Social Sec., 105 F. App'x 794 (6th Cir.2004), "[a]pplications for unemployment and disability benefits are inherently inconsistent." Id. at 801 (citing Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983)); see also Bowden v. Comm'r Social Sec., 1999 WL 98378, *7 (6th Cir. 1999).

The Court finds that the ALJ did not err in discounting the Plaintiff's credibility based, in part, on her receipt of unemployment benefits. The case law of this Circuit clearly establishes that the inconsistency inherent in receiving unemployment benefits – while certifying that one *can* and will work – and seeking disability benefits – while asserting that during the same period of time one *cannot* work – is relevant to the credibility of the claimant.

The Plaintiff asserts that the ALJ should have used the Plaintiff's attempts to find work to bolster her credibility, rather than undercutting her credibility. [Doc. 12 at 14]. The Plaintiff has not cited the Court to any cases holding the same and the Court has found none through its own review. Further, the Court finds that claiming benefits from one government agency by attesting to a willingness and ability to work and subsequently claiming benefits from a different government agency by attesting to an inability to work during the same time period does call one's credibility into issue.

With regard to the ALJ's note that the Plaintiff had not reached the maximum level of medical improvement, SSR 96-7p instructs the ALJ to consider explanations that may provide insight into why the Plaintiff has not undergone certain treatments. SSR 96-7p at *7-8. The ALJ followed his remark about surgery by noting that the Plaintiff "simply cannot afford such surgery." [Tr. 32]. The ALJ's statement indicates that he did not discount Plaintiff's credibility based upon her inability to pay. He observed that she had not met her maximum medical improvement, and as a result, the residual functional capacity determination included restrictions on repetitive handling feeling or fingering, along with restrictions on frequent overhead reaching. [Tr. 30]. The Court finds that the ALJ did not err by noting that the Plaintiff had not had surgery and could not afford such surgery, and that there is no indication that the ALJ discounted the Plaintiff's credibility because of such.

Based upon the foregoing and considering the deference afforded to an ALJ's credibility determination, the Court finds that the ALJ did not commit reversible error in evaluating the Plaintiff's credibility or subjective complaints.

## VI. CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing light work, with certain enumerated restrictions. Substantial evidence supports the ALJ's findings and conclusions. Therefore, Plaintiff's Motion For Summary Judgment **[Doc. 13]** is

**DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 11]** is

**GRANTED**.

　　　　IT IS SO ORDERED.


　　　　　　　　　　　　　　　　s/ Thomas A. Varlan
　　　　　　　　　　　　　　　　CHIEF UNITED STATES DISTRICT JUDGE


　ENTERED AS A JUDGMENT

　　　　s/ Debra C. Poplin
　　　　CLERK OF COURT